THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **SYMBOLOGY INNOVATIONS, LLC,** | |
| Plaintiff, | |
| v. | **CASE NO. 3:23-cv-02866-K** |
| **AMERICAN AUTOMOBILE ASSOCIATION INC., ET AL,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## OPPOSITION TO DEFENDANT'S 12(B)6 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# **TABLE OF CONTENTS**

I. SYNOPSIS. ...........................................................................................................................1

II. BACKGROUND ON THE PATENTED INVENTIONS. ...................................................2

III. LEGAL STANDARD. .........................................................................................................4

    A. Rule 12(b)(6) Motion To Dismiss. ..................................................................................4

    B. Section 101: Patent Eligible Subject Matter ...................................................................5

IV. ARGUMENT. .......................................................................................................................6

    A. Alice Step One. ................................................................................................................6

    B. Here, Claim Construction Is Pre-requisite. .....................................................................9

    C. Section 101 Motion is Premature. .................................................................................10

    D. Failure to Meet the Clear and Convincing Standard. ...................................................11

V. CONCLUSION. ..................................................................................................................11

I.  **SYNOPSIS.**

Plaintiff Symbology Innovations, LLC ("Plaintiff") files this Opposition to Defendant American Automobile Association Inc, et al.'s ("Defendant") Motion to Dismiss for Failure to State a Claim, filed on January 30, 2024. (Dkt. No. 12).

The motion should be denied for at least four (4) independent reasons:

1. Claim Construction is required with respect to at least the claim limitation "one or more visual detection applications" that appears in the two asserted claims identified in the operative complaint.

2. There is a material factual dispute to the question of "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field." *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. Feb. 2018). Defendant does not even provide a declaration from a single skilled artisan to aid the Court. Thus, considering all the facts in favor of the non-moving party, Defendant has failed to meet its burden.

3. Defendant fails to meet its high burden of proving "by clear and convincing evidence" that every claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field. *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. Feb. 2018).

4. A motion to dismiss under Section 101 is premature under Court's Order Requiring Scheduling Conference and Report for Contents of Scheduling Order in Patent Cases (Dkt. No. 20), which lays out required steps in patent infringement litigation based on years of experience and precedent like the U.S. Supreme Court ruling in *Markman*. Following the Court's schedule for patent cases, of relevance here is a specific date for plaintiff to provide infringement contentions, which again is a prerequisite for any court to identify the asserted claims to know what claim elements are at issue for the Section 101 analysis. Simply put, until the patentee identifies the assert patent claims in its infringement contentions there is no reasonable way to contend that a claim is "representative."

*See* Motion at 9.

In summary, Plaintiff is not arguing that Defendant should be precluded from later filing a motion for summary judgment based upon Section 101 subject matter patentability. Instead, Plaintiff is indicating that granting a motion based on Section 101 that requires clear and convincing evidence that every claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is plainly not met by the Defendant in its motion. *See Berkheimer v. HP, Inc*., 881 F.3d 1360, 1368 (Fed. Cir. Feb. 2018).

## II.   BACKGROUND ON THE PATENTED INVENTIONS.

The patented inventions of the asserted patents begin with the United States Patent and Trademark Application No. Application/Control Number: 12/882,616, filed on September 15, 2010. This application is the parent application to the patents-in-suit, U.S. Patent Nos. 8,651,369 (the "'369 Patent") and 8,936,190 (the "'190 Patent"). During the patent prosecution back and forth, an Office Action explained that certain dependent patent claims would be allowable if re-written as independent due to the underlying initially independent claim (base claim) being rejected. *See* Exhibit 1 ("Office Action Summary") at SYM000082.

The Examiner, Allyson N. Trail, thoughtfully explained her analysis as follows: "Claims 3-6, 9, 10, 14-16, and 18-21 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form, including all of the limitations of the base claim and any intervening claims." *Id.*

Examiner Allyson N. Trail explained her reasons for allowance.

> The following is an examiner's reason for allowance:
>
> Although Fitzpatrick teaches a method including detecting a symbology associated with an object, decoding the symbology to obtain a decode string, sending the decode sting for processing, receiving a first amount of information about the object from the visual detection application, sending the decode string to a remote server for processing and receiving a second amount of information from the server, combining the first and second amount of information, and displaying the information on a display device, the above identified prior art of record, taken alone, or in combination with any other prior art, fails to teach or fairly suggest

2

> the specific features of claims 3-6, 9, 10, 14-16 and 18-21 of the present claimed invention.
>
> Specifically prior art fails to teach, including presets, which include at least one of a selection of one or more visual detection applications to handle scanning operations, a selection of one or more visual detection application to handle image capture operations, a maximum number of applications configured to receive a decode string, an amount of information to be displayed, the type of information to be displayed, and e-commerce options.
>
> Prior art additionally fails to teach wherein one or more visual detection systems are configured to run in the background with respect to other systems associated with the mobile device, wherein the visual detection systems comprise the one or more visual detection applications and one or more visual detection devices and wherein the one or more visual detection devices are configured to detect the symbology associated with the object.
>
> Prior art fails to teach the method further including analyzing the decode string to determine a category of the object and selecting one or more appropriate applications to process the decode string when the one or more visual detection applications are not pre-selected.
>
> Lastly, prior art fails to teach the computer application wherein the one or more visual detection systems are configured to automatically detect the symbology, wherein the computer application further includes logic adapted to alert the user when an image containing symbology has been detected, logic adapted to ask the user if decoding of the symbology is desired, and logic adapted to receive a reply from the user.
>
> The above limitations are not disclose[d] in prior art and moreover, one of ordinary skill in the art would not have been motivated to come to the claimed invention.

(Exhibit 1 at SYM000082-83).

As such, the Patentee added a limitation that requires visual detection systems by required to run in the background with respect to other systems associated with the mobile device. This is the proper construction of the term "one or more visual detection applications." But given the pre-mature nature of Defendant's dispositive motion at the pleading stage, claim construction scheduling is just not beginning and a discussion about the meaning of the terms

3

and whether any stipulations can be reached by the parties, appears to be about four months away based on a proposed scheduling date yet to be finalized by the parties.[1]

This is a source of patentability over the prior art and it is not something that can be performed by person and is merely automated by a machine.

| Disputed Term/Phrase | Claim(s) in Which Term Appears |
|---|---|
| "one or more visual detection applications" | **Pat. No. 8,424,752** |
| | 1, 5, 24 |
| | **Pat. No. 8,651,369** |
| | 1, 5, 24 |
| | **Pat. No. 8,936,190** |
| | 1, 5, 20 |

As such, the inventive concept and subject matter patentability over the prior art is laid out not by the Patentee but the Examiner herself.

## III.   LEGAL STANDARD.

### A.   Rule 12(b)(6) Motion To Dismiss.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 232

---

[1] The parties have a deadline in three (3) days to finalize their joint submission to the Court in compliance with the Court's Order.  (Dkt. No. 20).

4

(5th Cir. 2009). However, the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678. To be legally sufficient, the complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id.* The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255–57. If it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief, the court must dismiss the claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In considering a motion to dismiss for failure to state a claim, a court considers only the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### B. Section 101: Patent Eligible Subject Matter

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Because patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2354 (2014). The Supreme Court instructs courts to distinguish between claims that claim patent ineligible subject matter and those that "integrate the building blocks into something more." *Id.* First, the Court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 2355. If so, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Id*. at 2355 (*quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012) ). However, the Court must be wary not to over generalize the invention, as "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id*. at 2354 (omission in original). The second step of the Alice test is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1347-

5

48 (Fed. Cir. 2014) (quoting Alice, 134 S. Ct. at 2359).

The Federal Circuit stated that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc.*, No. 2016-2315, 2018 WL 1193529 at *4 (Fed. Cir. March 8, 2018). There are many obscure references that may qualify as prior art, but are insufficient to establish something is "well-understood, routine, and conventional activity previously engaged in by scientists who work in the field." *Mayo,* 566 U.S. at 79; *see also In re Hall*, 781 F.2d 897, 897-900 (Fed. Cir. 1986) (holding that a single copy of a thesis, written in German and located in a German university library, qualified as a printed publication because the thesis was available to the public).

2018 WL 7823098 (E.D.Tex.), 2
2018 WL 7823098 (E.D.Tex.), 1

**IV.   ARGUMENT.**

There are multiple independent grounds for denying Defendant's motion to dismiss without prejudice.  Defendant filing a motion based on patentable subject matter under Section 101 after the Court has had an opportunity to allow the parties to conduct discovery into the facts underlying a legal conclusion that requires clear and convincing evidence that the patented inventions were well-understood, routine, and conventional to a skilled artisan in the relevant field.  At this stage, what constitutes "a skilled artisan" is not even defined by the defendant nor is "the relevant field."

      **A.   Alice Step One.**

Defendant states that the "claims of the Asserted Patents are directed to the abstract idea of data recognition and retrieval, and none of the claims recites any specific non-conventional

6

hardware or software." Motion at 1 (citing "*In Secured Mail Solutions LLC v. Universal Wilde, Inc*., 873 F.3d 905, 912 (Fed. Cir. 2017)). Defendant goes on to argue that "the claims of the Asserted Patents cannot be meaningfully distinguished from the *Secured Mail* claims and are thus invalid for the same reasons." *Id.*

Relevant to this case is the holding distinguishing *Secure Mail Solutions* recently performed by Chief Judge Rodney Gilstrap of the Eastern District of Texas in the case *Intellectual Ventures II, LLC, v. FedEx Corp*., No. 2:16-CV-00980-JRG, 2018 WL 7823098 *3 (E.D. Tex. May 10, 2018).

In *Intellectual Ventures II,* Chief Judge Gilstrap distinguishes *Secured Mail Solutions* by explaining specific technologic modifications to solve a problem or improve the functioning of a known system generally produce patent-eligible subject matter as explained in the excerpt below. *See Intellectual Ventures II LLC, v. FedEx Corp*., No. 2:16-CV-00980-JRG, 2018 WL 7823098 *3 (citing *Secured Mail Solutions*, 873 F.3d at 908).

> In *Secured Mail*, the Federal Circuit reviewed the following claim for patent eligibility:
> 1. A method of verifying mail identification data, comprising:
> affixing mail identification data to at least one mail object, said mail identification data comprising a single set of encoded data that includes at least a unique identifier, sender data, recipient data and shipping method data, wherein said unique identifier consists of a numeric value assigned by a sender of said at least one mail object;
> storing at least a verifying portion of said mail identification data;
> receiving by a computer at least an authenticating portion of said mail identification data from at least one reception device via a network, wherein said authenticating portion of said mail identification data comprises at least said sender data and said shipping method data; and
> providing by said computer mail verification data via said network when said authenticating portion of said mail identification data corresponds with said verifying portion of said mail identification data.

7

There, the plaintiffs argued that the claims were "specifically directed to a sender-generated unique identifier, which improved on the existing process both by reliably identifying the sender of the mail object and by permitting the sender to create a bi-directional communication channel between the sender and recipient of the mail object." However, the Federal Circuit found that the claims were "not directed to specific details of the barcode or the equipment for generating and processing it" because "no special rules or details of the computers, databases, printers, or scanners [were] recited." *Id.* Instead, the Federal Circuit found that the claims merely "state[d] that various identifiers are affixed to a mail object, stored in a database, scanned from the mail object, and retrieved from the database. *Id.* at *3.

Plaintiff argues that Claim 7 is not abstract under *Alice* Step One, because interchanging data using tagged bar codes provides a technological solution to the way a computer functions by utilizing a novel "multi-level structure" containing "tagged bar codes that allow data transfer without custom or sophisticated software between computers using different operating systems and/or software applications." (Dkt. No. 176 at 14–18.) Plaintiff further argues that the only similarity between the claims in *Secured Mail Solutions* and the present action is the use of bar codes to convey information; instead, Plaintiff states that "the '586 patent claims organize data into a specific data structure that enhances data interchange."

The Federal Circuit has held that "specific technologic modifications to solve a problem or improve the functioning of a known system generally produce patent-eligible subject matter." *Trading Techs. Int'l Inc. v. CQG, Inc.*, 675 F. App'x. 1001, 1004–05 (Fed. Cir. 2017). For example, claims "necessarily rooted in computer technology [that] overcome a problem specifically arising in the realm of computer networks" are patent eligible. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Similarly, process claims that use "a combined order of specific rules" to improve on existing technological processes are patent eligible. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) (holding that an algorithm to make digital faces more realistic was patent eligible).

Here, Claim 7 is directed towards a technological solution to a technological problem, namely, the elimination of a previously necessary third party in "transferring bar code data between businesses and consumers using different hardware and software applications." (Dkt. No. 176 at 14.) At a high level, Claim 7 achieves this by creating an electronic document that can store tagged bar coded information, which can then be sent to a

8

> counterparty in order to decode a bar code. This solution improves upon the previously existing technological structure that required sophisticated software developed by third parties by allowing users to easily transfer bar code data between parties that may be using different operating systems or software applications.
>
> Further *Secured Mail* is not persuasive in this case. *Secured Mail* stands for the rather unremarkable proposition that using a bar code to "communicat[e] information about a mail object" is not patent eligible. *Secured Mail,* 873 F.3d at 911 (holding that the claims were not patent eligible because "no special rules or details of the computers, databases, printers, or scanners were recited"). Here, however, the Claims are directed to more than affixing a bar code to an object in order to communicate information. Instead, Claim 7 is directed to a process whereby the information needed to decode specialized, tagged barcodes is packaged into a specific, multi-layer data structure in order to improve upon the existing technology. Secured Mail is distinguishable and, as such, does not persuade the Court that Claim 7 is patent ineligible.

*Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2018 WL 7823098, at *3–4 (E.D. Tex. May 10, 2018).

Here, Defendant has not met its burden to even establish a representative claim, and thus again this analysis is premature.  But assuming Defendant did, which it did not, similar to *Intellectual Ventures*, here the improvement over the prior art is explained above in the background section that is publicly available.  To the extent, the Court takes the position that the prosecution history is not a part of the pleadings, Patentee Plaintiff respectfully asks that it be allowed leave to amend in the interest of justice to obtain a result based on the merits.

Thus, the Court should deny Defendant's motion at this pleading stage.

### B.   Here, Claim Construction Is Pre-requisite.

Claim Construction is required with respect to at least the claim limitation "one or more visual detection applications" that appears in the two asserted claims identified in the operative complaint.  The '369 Patent and the '190 Patent are continuations of the same parent application, which issued on August 9, 2011, as U.S. Patent No. 7,992,773 ("The Parent" or "'773 Patent") and is entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device." During the prosecution of the '773 Patent, the applicant narrowed Claim 1 of the '773 patent via claim amendment in response to an Office Action issued

9

by the USPTO (*See* Symbology production, Bates Nos. SYM000083 and SYM000088 – SYM000096). As a result of applicant's amendment to Claim 1, every claim of the '773 Patent includes the limitation in which the "one or more visual detection applications" are configured to "run in the background," "automatically" decode "symbology" and send the decode string to another "visual detection application" residing on the portable device. (Exhibit 2 at SYM000090).

Importantly, during the prosecution of the Asserted Patents, applicant did not rescind the limitation requiring the visual detection to occur automatically and in the background. Additionally, the '773 Patent, the '369 Patent and the '190 Patent all contain the same language in the specifications as it relates to the "visual detection applications." Thus, Symbology's position is that the limitation in the Parent Patent applies to the phrase "visual detection applications" in the Asserted Patents, and a proper construction of this phrase is required in order to properly evaluate the merits of Defendant's "abstract concept" arguments.

There is a material factual dispute to the question of "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field." *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. Feb. 2018). Defendant does not even provide a declaration from a single skilled artisan to aid the Court.

The Asserted Claims of the patents (still not defined yet) are presumptively novel and non-obvious, presumptively drawn to patent-eligible subject matter, and presumptively properly examined and allowed by the Examiner(s) at the United States Patent Office. *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc., et al.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019). Thus, considering all the facts in favor of the non-moving party, Defendant has failed to meet its burden.

C.     **Section 101 Motion is Premature.**

A motion to dismiss under Section 101 is premature under Court's Order Requiring Scheduling Conference and Report for Contents of Scheduling Order in Patent Cases (Dkt. No. 20), which lays out required steps in patent infringement litigation based on years of experience and precedent like the U.S. Supreme Court ruling in *Markman*. Following the Court's schedule for patent cases, of relevance here is a specific date for plaintiff to provide infringement contentions, which again is a prerequisite for any court to identify the asserted claims to know

what claim elements are at issue for the Section 101 analysis. Simply put, until the patentee identifies the assert patent claims in its infringement contentions there is no reasonable way to contend that a claim is "representative." *See* Motion at 9.

### D. Failure to Meet the Clear and Convincing Standard.

There is a material factual dispute to the question of "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field." *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. Feb. 2018). Here, Defendant does not even provide a declaration from a single skilled artisan to aid the Court. Instead, the Defendant offers merely a circular argument that Plaintiff's complaint says that it is novel and contains patentable subject matter, to which it responds in conclusory language that it does not. The only 'evidence' provided by the Defendant is to cite to a case involving different patents, different parties and say follow what that other judge did. This is not correct. The record here is not developed and the Defendant has done nothing to help this Court rule in its favor as it has failed to meet its evidentiary standard. Defendant does not provide any evidence of the state of the art or to even contradict the statements of allowance in original parent application, which creates an identified patent claim construction dispute.

### V. CONCLUSION.

Thus, considering all the facts in favor of the non-moving party, Defendant has failed to meet its burden. Defendant fails to meet its high burden of proving "by clear and convincing evidence" that every claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field. *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. Feb. 2018).

Dated: February 27, 2024 	Respectfully Submitted,

*/s/ M. Scott Fuller*
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
M. Scott Fuller
  Texas Bar No. 24036607
  rgarteiser@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document has been served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ M. Scott Fuller*
M. Scott Fuller